IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PNC Bank, National              :
    Association,

                                 :              Case No. 2:15-cv-1038

        Plaintiff,

                                 :              Magistrate Judge Kemp

    v.

Pataskala Town Center, LLC,     :
et al.,

                                 :

        Defendants.

OPINION AND ORDER

This case was brought by plaintiff PNC Bank, NA ("PNC"), seeking judgment against defendants Pataskala Town Center, LLC ("Pataskala"), Hazelton Retail I, Ltd. ("Hazelton"), The Lafayette Partners, LLC ("Lafayette"), and Scott T. Mallory ("Mr. Mallory") in relation to a number of promissory notes, guaranties, mortgages, and other loan documents. This matter is before the Court on three motions, all of which have been fully briefed and are ripe for decision: (1) PNC's motion for summary judgment (Doc. 56); (2) defendant Lafayette's and Mr. Mallory's motion for partial summary judgment (Doc. 58); and (3) defendants' motion for partial judgment on the pleadings (Doc. 54). For the reasons set forth below, the defendants' motions for partial summary judgment and partial judgment on the pleadings will be denied and PNC's motion for summary judgment will be granted.

I. Background

The facts of this case are undisputed. The factual background of this case is set out in the pleadings and in the Affidavit of Christopher Guyer, the Vice President of PNC, and its supporting exhibits (Doc 56-1; hereinafter "Affidavit at _____").

On March 28, 2007, the defendants executed a number of loan documents with National City Bank ("NCB").  Pataskala, an Ohio limited liability company, executed a promissory note in the amount of $1,510,500.00 ("Pataskala Loan Agreement") as well as a mortgage note in the same amount ("Pataskala Note") to NCB. Affidavit at ¶6.  In order to further secure its obligations to NCB under the Pataskala Loan Agreement and Pataskala Note, Pataskala entered into an open-end mortgage, granting to NCB a security interest and lien upon its personal property, including fixtures and equipment ("Pataskala Personal Property"), which was perfected when NCB filed UCC financing statements with the Ohio Secretary of State.  Id. at ¶9.  On the same day, Hazelton, an Ohio limited liability company, executed an open-end mortgage ("Pataskala Mortgage"), granting to NCB a security interest and lien upon property known as 0 Hazelton-Etna Road, Pataskala, Ohio, Parcel No. 064-152712-00.001 ("Pataskala Property").  Id. at ¶¶10-11.  Lafayette, an Ohio limited liability company, and Mr. Mallory also executed an unconditional guaranty of payment and performance ("Pataskala Guaranty") whereby they jointly and severally guaranteed to pay to NCB any and all of Pataskala's obligations to NCB under the Pataskala Note in the event of default.  Id. at ¶12.  To further secure its obligations under the Pataskala Loan Agreement and Pataskala Note, Pataskala also executed to NCB an open-end mortgage agreement ("Pataskala Second Mortgage"), granting to NCB and its successors a security interest in and lien upon the real property at 0 Hazelton-Etna Road, Pataskala, Ohio, Parcel No. 064-152712-00.003 (the "Hazelton Property").  On or about March 18, 2009, Pataskala, Hazelton, Lafayette, and Mr. Mallory executed a modification of the Pataskala Loan Agreement and Pataskala Note, which included extending the maturity date of the Pataskala Note to June 1, 2009 ("Pataskala Modification").  Id. at ¶13.

2

On March 28, 2007, Hazelton also executed a loan agreement with NCB in the amount of $5,484,600.00 ("Hazelton Loan Agreement"). Affidavit at ¶14. In relation to the Hazelton Loan Agreement, Hazelton also executed a mortgage note in the same amount ("Hazelton Note"). To secure its obligations under the Hazelton Loan Agreement and Hazelton Note, Hazelton executed an open-end mortgage ("Hazelton Mortgage") which granted NCB a security interest in and lien upon its personal property, including equipment and fixtures ("Hazelton Personal Property"). The Hazelton Personal Property was perfected when NCB filed UCC financing statements with the Ohio Secretary of State. Id. at ¶18. As further security on the Hazleton Loan Agreement and Note, Pataskala executed an open-end mortgage, granting to NCB a security interest in and lien on the Pataskala Property ("Hazelton Second Mortgage"). Id. at ¶19. Lafayette and Mr. Mallory executed an Unconditional Guaranty of Payment and Performance ("Hazelton Guaranty") in relation to the Hazelton Note, in which they agreed, jointly and severally, to pay Hazelton's obligations under the Hazelton Note in the event of default. Id. at 21. On March 18, 2009, Pataskala, Hazelton, Lafayette and Mr. Mallory executed a modification of the Hazelton Note (the "Hazelton Modification") which, among other things, extended the maturity date of the Hazelton Note to June 1, 2009. Id. at ¶27.

The Pataskala Note, pursuant to the Pataskala Modification, matured on June 1, 2009, at which time all sums were due, including principal, interest, and advances made by NCB. Pataskala failed to pay the full amount upon maturity. Affidavit at ¶29. According to PNC's motion for summary judgment, as of September 21, 2016, the outstanding amount on the Pataskala Note was $1,858,200.97 ($1,510,500.00 in principal, $217,784.75 in interest, $118,592.22 in real estate taxes, and $11,324.00 in

other costs and advances). The Hazelton Note, pursuant to the
Hazelton Modification, also matured on June 1, 2009, at which
time all outstanding sums were due and owing, but which was not
paid in full. The outstanding amount due as of Sepember 21, 2016
totaled $4,047,806.47 ($3,289,021.60 in principal, $474,213.00 in
accrued interest, $269,103.87 in real estate taxes, $15,468.00 in
other costs and advances). Interest continues to accrue on the
principal of both mortgages at the rate of LIBOR plus 3.5%, which
is 4.031780% as of the date of the filing of PNC's motion for
summary judgment.

On November 6, 2009, NCB merged into PNC Bank, National
Association ("PNC"), a Delaware corporation, and PNC assumed the
legal rights and obligations of NCB. Id. at ¶28, Exhibits O and
P. PNC filed this action against the defendants on March 24,
2015 seeking judgment for default of the loan documents. The
claims are as follows:

1. Cognovit Judgment on the Pataskala Note

2. Cognovit Judgment on the Pataskala Guaranties

3. Cognovit Judgment on the Hazelton Note

4. Judgment on the Hazelton Guarantees

5. Foreclosure of the Pataskala Mortgages

6. Foreclsoure of the Pataskala Security Interests

7. Foreclosure of the Hazelton Mortgages

8. Foreclosure of the Hazelton Secuity Interests

9. Appointment of a Receiver for the Pataskala
Property

10. Appointment of a Receiver for the Hazelton
Property

4

On March 26, 2015, the defendants filed a cognovit answer to
Counts 1-3, and on April 16, 2015, an answer to the remaining
counts.  The Court has not entered cognovit judgments with
respect to counts 1-3 of the complaint.  On December 1, 2015, a
receiver was appointed for the Pataskala and Hazelton Properties,
which resolved counts 9 and 10 of the complaint in favor of PNC.
The defendants have filed a motion for judgment on the pleadings
with respect to counts 1-3 of the complaint.  PNC has filed a
motion for summary judgment as to counts 1-8, and the defendants
have filed a motion for partial summary judgment as to count 4 of
the complaint.  The Court will first address the motions for
summary judgment.

II.  <u>Legal Standard for Summary Judgment</u>

Summary judgment is not a substitute for a trial when
facts material to the Court's ultimate resolution of the case
are in dispute.  It may be rendered only when appropriate
evidentiary materials, as described in Fed. R. Civ. P. 56(c),
demonstrate the absence of a material factual dispute and the
moving party is entitled to judgment as a matter of law.
<u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464
(1962).  The moving party bears the burden of demonstrating
that no material facts are in dispute, and the evidence
submitted must be viewed in the light most favorable to the
nonmoving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144
(1970).  Additionally, the Court must draw all reasonable
inferences from that evidence in favor of the nonmoving
party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).
The nonmoving party does have the burden, however, after
completion of sufficient discovery, to submit evidence in
support of any material element of a claim or defense on
which that party would bear the burden of proof at trial,
even if the moving party has not submitted evidence to negate

5

the existence of that material fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking
summary judgment ... bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of [the record] which it believes
demonstrate the absence of a genuine issue of material fact,"
Celotex, 477 U.S. at 323, the responding party is only required
to respond to those issues clearly identified by the moving party
as being subject to the motion.  It is with these standards in
mind that the instant motions for summary judgment must be
decided.

       III.  Discussion- Summary Judgment

     Jurisdiction of this Court over this matter is based on the
diversity of the parties.  Because the agreements and property at
issue are located in Ohio, the parties agree that Ohio law
applies.

       A.  Defendants' Motion for Partial Summary Judgment

     Lafayette and Mr. Mallory move for summary judgment on count
4 of the complaint, which seeks judgment on the Hazelton
Guaranty, because the original document has been lost.  They
state that under Ohio law, when a person signs an instrument as
its maker, that person becomes obligated to pay the instrument to
a "person entitled to enforce" it.  O.R.C. §1303.52.  In this
case, the Hazelton Guaranty is an instrument and Mr. Mallory and
Lafayette are its joint makers.  However, they assert that PNC
cannot prove that it is a person entitled to enforce it.

     Under O.R.C. §1303.31, "person entitled to enforce is
defined as (1) the holder of the instrument; (2) a non-holder in
possession of the instrument who has the rights of a holder; or
(3) a person not in possession of the instrument who is entitled
to enforce the instrument pursuant to O.R.C. §1303.38."

Lafayette and Mr. Mallory argue that because the original signed Hazelton Guaranty is lost, PNC only qualifies as a "person entitled to enforce" the Hazelton Guarantee if PNC can satisfy the requirements of O.R.C. §1303.38; see Fannie Mae v. Hicks, 35 N.E.3d 37 (Cuyahoga Cty. App. 2015).  In the Hicks case, the Court of Appeals reversed the trial court's grant of summary judgment in favor of the plaintiff/mortgagor where the original mortgage note had been lost.  The Court looked to the then current version of O.R.C. §1303.38 (Ohio's enactment of UCC 3-309), which permits a person to enforce a lost, destroyed or stolen instrument through secondary evidence under the following conditions:

> (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred; (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

The mortgagor in Hicks did not satisfy the statutory conditions because it was not in possession of the instrument at the time of loss.  The Hicks court also relied on a federal case which concluded that, under the plain language of UCC §3-309 (identical to the Ohio statute), only the person in possession of a negotiable instrument at the time of loss is entitled to enforce the instrument.  Id. at 41-42, citing Dennis Joslin Co., LLC v. Robinson Broadcasting Corp., 977 F.Supp. 491 (D.D.C 1997).

Subsequent to the Joslin decision, UCC §3-309 was amended to permit enforcement of a negotiable instrument if the person was entitled to enforce the instrument at the time of loss or directly or indirectly acquired entitlement to enforce from a person who was entitled to enforce it at the time of loss.  Id.

7

at 42. At the time of the <u>Hicks</u> case, Ohio had not yet adopted the amended version of UCC §3-309. The defendants argue that because the Hazelton Guaranty was lost at the time it was held by NCB, under the Ohio statute PNC does not have the right to enforce it.

In response, PNC points out that on March 18, 2009, Hazelton, Lafayette, Mallory and Pataskala executed the Hazelton Modification, in which Hazelton reconfirmed its obligations under the Hazelton Mortgage and extended its maturity date (although NCB did not merge into PNC until later that year). Affidavit at 8; Exhibit N. It also points out the defendants' answer states that "[d]efendants admit that on or about March 28, 2007 Defendants Lafayette and Mallory executed with National City Bank the Hazelton Guaranty. Further answering, Defendants state that the Hazelton Guaranty attached as Exhibit N speaks for itself." (Doc. 10). The Guyer Affidavit states that the Hazelton Guaranty had not been transferred, assigned, or encumbered and that although the original document had been lost, a true copy was attached to the complaint and motion for summary judgment. <u>Id</u>. at 22-26; Exhibit N. PNC further asserts that O.R.C. §1303.38 was amended on September 28, 2016, to conform to the current version of UCC §3-309.

Next, PNC argues that the Court's initial inquiry should be whether the Hazelton Guaranty is an "instrument" covered by the statute. PNC argues that the Hazelton Guaranty is not. The chapter the Ohio Revised Code in which O.R.C. §1303.38 is found states that "this chapter applies to <u>negotiable</u> instruments" (emphasis added). O.R.C. §1302(A). The Ohio Supreme Court has held that while promissory notes and mortgages are "negotiable instruments," separate guarantee agreements are not. <u>Buckeye Federal Savings & Loan Assn. V. Guirlinger</u>, 62 Ohio St.3d 312, 315 (1991); <u>see also</u> UCC §3-104:34 ("A separate written guaranty

8

does not satisfy the requirements of UCC §3-104 and therefore is not governed by Article 3."). The Court finds PNC's argument on this point persuasive, and concludes that the guaranties at issue in this case are not negotiable instruments covered by O.R.C. §1303.38.

Nonetheless, even if O.R.C. §1303.38 does apply, PNC has satisfied the requirements to be a person entitled to enforce the instrument (either pre- or post- the September 2016 amendment). NCB merged into PNC, which means that the rights and obligations of NCB became those of PNC, and there was no transfer. See e.g. Cattron, Inc. v. Overhead Crane & Hoist, Inc. 32 Ohio App.3d 80 (Hamilton Cty. 1987) (a transferee corporation adopts the legal rights and obligations of the transferor where the transaction is merely a consolidation or a merger). It is not clear at what point in time the Hazelton Guaranty was lost. However, the Guyer Affidavit confirms that there was no transfer, assignment or encumbrance on the Hazelton Guaranty, and that the original was simply lost. The defendants do not contest the accuracy of the copy of the Hazelton Guaranty in the record. Thus, under either the pre- or post- September 28, 2016 version of O.R.C. §1303.38, PNC simply succeeded to NCB's right to enforce the Hazelton Guaranty at the time of loss. For these reasons, Lafayette's and Mr. Mallory's motion for partial summary judgment will be denied.

### B. PNC' Motion for Summary Judgment

PNC moves for summary judgment on counts 1-8 of the complaint. Those are the only counts which remain to be decided, because counts 9-10 were resolved upon the appointment of a receiver for the Pataskala Property and the Hazelton Property.

### 1. The Pataskala Note (Count 1) and the Pataskala Guaranty (Count 2)

In order to prevail on summary judgment against Pataskala on the Pataskala Note and against Lafayette and Mr. Mallory on the

9

Pataskala Guaranty, PNC must demonstrate that Pataskala executed and delivered the Pataskala Note to PNC and that Lafayette and Mr. Mallory executed and delivered the Pataskala Guaranty to PNC or its predecessor in interest; that the outstanding balance of the Pataskala Note is due and payable; that Pataskala failed to pay the balance pursuant to the terms of the Pataskala Note, and that Lafayette and Mr. Mallory are therefore liable for the amount due to PNC pursuant to the Pataskala Guaranty.

Ohio law is well settled that the liability of a guarantor arises under an unconditional guaranty when the debtor of the note which was guaranteed fails to make timely payment. Castle v. Rickly, 44 Ohio St. 490, 496 (1886). The guarantor is not made a party to the note, and nothing more is required to establish liability other than the default of the note which was guaranteed. Id. The facts are not in dispute in this respect. The Pataskala Note was executed by Pataskala on March 28, 2007 in the amount of $1,510,500.00. Affidavit at ¶¶5-6; Exhibit A. The Pataskala Guaranty was executed by Lafayette and Mr. Mallory. Id. at ¶12; Answer at ¶12. The Pataskala Note reached maturity and Pataskala failed to pay the balance due. The Pataskala Guaranty contains the following provision:

> "[Mr. Mallory and Lafayette]... for themselves, their heirs, personal representatives, successors and assigns, hereby jointly and severally, unconditionally and absolutely guarantee to [PNC], its successors and assigns, the faithful, punctual and complete performance of any and all obligations, and the full and prompt payment, whether at maturity or by acceleration or otherwise, any and all indebtedness, fixed or contingent.... of [Pataskala] to [PNC], pertaining to the loan evidenced by [the Pataskala Note]...."

Id., Exhibit F, ¶1. Due to the default by Pataskala on the Pataskala Note, Lafayette and Mr. Mallory are jointly and severally liable for the amount due on the Pataskala Note

10

pursuant to the terms of the Pataskala Guaranty.  Id. Exhibit F
at ¶3.  For these reasons, summary judgment will be granted in
favor of PNC with respect to Counts 1 and 2 of the Complaint.

2.  <u>The Hazelton Note (Count 3) &amp; the
Hazelton Guaranty (Count 4)</u>

The analysis for determining summary judgment on the
Hazelton Note and the Hazelton Guaranty mirrors that of the
analysis above regarding the Pataskala Note and the Pataskala
Guaranty.  In order to prevail on summary judgment PNC must
demonstrate that Hazelton executed and delivered the Hazelton
Note to PNC; that Lafayette and Mr. Mallory executed and
delivered the Hazelton Guaranty to PNC and that PNC is the holder
of the Hazelton Note and the Hazelton Guaranty; that the full
outstanding balance of the Hazelton Note is due and payable; that
Hazelton has failed to pay the balance to PNC; and thus,
Lafayette and Mr. Mallory are liable for the balance pursuant to
the terms of the Hazelton Guaranty.  As discussed above, the
Court rejects the argument that the defendants are entitled to
summary judgment on the Hazelton Guaranty due to the original
document's being misplaced, and the accuracy of the copy of the
Hazelton Guaranty in the record is not at issue.

The facts are undisputed that Hazelton executed and
delivered the Hazelton Note to PNC's predecessor, NCB, and that
following the merger, PNC because the owner and holder of the
Hazelton Note.  Affidavit at ¶15; Answer at ¶19.  It is also
undisputed that Lafayette and Mr. Mallory executed and delivered
the Hazelton Guaranty.  Affidavit at ¶21; Answer at ¶23.  There
is no question of fact as to whether the entire outstanding
amount of the Hazelton is due and payable due to Hazelton's
default. Id. at ¶31.  In respect of the Hazelton Guaranty, there
is also no question of fact that the Hazelton Guaranty contains

the following provision (virtually identical to the provision in
the Pataskala Guaranty):

> "[Mr. Mallory and Lafayette]... for themselves, their
> heirs, personal representatives, successors and
> assigns, hereby jointly and severally, unconditionally
> and absolutely guarantee to [PNC], its successors and
> assigns, the faithful, punctual and complete
> performance of any and all obligations, and the full
> and prompt payment, whether at maturity or by
> acceleration or otherwise, any and all indebtedness,
> fixed or contingent.... of [Hazelton] to [PNC],
> pertaining to the loan evidenced by [the Hazelton
> Note]...."

Id., Exhibit N at ¶1. Due to the default by Pataskala on the
Pataskala Note, Lafayette and Mr. Mallory are jointly and
severally liable for the amount due on the Hazelton Note pursuant
to the terms of the Hazelton Guaranty. Id. Exhibit F at ¶3. For
these reasons, summary judgment will be granted in favor of PNC
with respect to Counts 3 and 4 of the Complaint.

     3. <u>Decrees of Foreclosure (Counts 5, 6, 7 and 8)</u>

It is well settled under Ohio law that once a default in
payment has been established under the terms of a promissory
note, the mortgagee is entitled to judgment. <u>First Merit Bank,
N.A. v. Miles & Miles Group, Inc.</u>, 2013 WL 5566229 at *4 (N.D.
Ohio July 23, 2013), <u>citing</u> <u>Bradfield v. Hale</u>, 67 Ohio St. 316
(1902). The Court will apply the undisputed facts on the record
to each of the foreclosure claims.

     i. <u>The Pataskala Mortgage and the Pataskala
Second Mortgage (Count 5)</u>

The facts are undisputed that PNC is the holder of the
Pataskala Mortgage and the Pataskala Second Mortgage and that
these mortgages were executed and delivered by Pataskala and
Hazelton, respectively. Affidavit at ¶¶7, 10 and 28; Exhibits C
& E. As a result of the default of its obligations to PNC under
the Pataskala Loan Agreement and Pataskala Note, the conditions

of defeasance contained in the Pataskala Mortgage and the Pataskala Second Mortgage have been broken. Id. at ¶29. Hazelton is in default of its obligations to PNC under the Hazelton Loan agreement and Hazelton Note for failing to pay the obligations pursuant to the terms thereof. Id. at ¶31. Based upon the undisputed evidence presented, PNC possesses the first and best lien upon the Pataskala Property (subject to any real estate taxes due and owing) pursuant to the Pataskala Mortgage. PNC also possesses the second priority lien upon the Hazelton Property (subject to any real estate taxes due and owing), pursuant to the Pataskala Second Mortgage. Thus, PNC is entitled to a judgment of foreclosure on the Pataskala Mortgage and the Pataskala Second Mortgage.

ii.   The Hazelton Mortgage and the Hazelton
      Second Mortgage (Count 6)

The facts are undisputed that PNC is the holder of the Hazelton Mortgage and the Hazelton Second Mortgage and that these mortgages were executed and delivered by Hazelton and Pataskala, respectively. Affidavit at ¶¶ 16-20; Exhibits J & L. As a result of the default of its obligations to PNC under the Hazelton Loan Agreement and Hazelton Note, the conditions of defeasance contained in the Hazelton Mortgage and the Hazelton Second Mortgage have been broken. Affidavit at ¶31. Based upon the undisputed evidence presented, PNC possesses the first and best lien upon the Hazelton Property (subject to any real estate taxes due and owing) pursuant to the Hazelton Mortgage. Id. at ¶18; Exhibit K. PNC also possesses the second priority lien upon the Pataskala Property (subject to any real estate taxes due and owing), pursuant to the Hazelton Second Mortgage. Id. at ¶19. Thus, PNC is entitled to a judgment of foreclosure on the Hazelton Mortgage and the Hazelton Second Mortgage.

iii.   Foreclosure on the Security Interest in the
       Pataskala Personal Property (Count 7)

13

Due to the default under the Pataskala Note, the conditions of defeasance contained in the Pataskala Mortgage and the Pataskala Second Mortgage have been broken.  Thus, PNC is entitled to have the Pataskala Personal Property sold and the proceeds applied to its debt.

    iv.  <u>Foreclosure on the Security Interest in the Hazelton Personal Property (Count 8)</u>

Due to the default of the Hazelton Note, the conditions of defeasance contained in the Hazelton Mortgage and the Hazelton Second Mortgage have been broken.  Thus, PNC is entitled to have the Hazelton Personal Property sold and the proceeds applied to its debt.

    IV.  <u>Defendants' Motion for Judgment on the Pleadings</u>

The defendants move for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on Counts 1-3 of the complaint based on the assertion that the warrants of attorney in the Pataskala Note, the Pataskala Guaranty, and the Hazelton Note are void as uncertain and indefinite and further because the warrants of attorney are not transferrable to Plaintiff.  However, the Court never entered judgment against the defendants on the cognovit terms.  PNC subsequently moved for summary judgment seeking the same relief based not on the cognovit answer, but on the terms of the Pataskala Note, the Pataskala Guaranty, and the Hazelton Note.  PNC argues in its memorandum in opposition to the motion for judgment on the pleadings that it filed Counts 1-3 under the warrants of attorney contained in the underlying promissory notes and guaranty, and that it is entitled to judgment on the terms of the instruments, whether or not the cognovit answer is deemed to be valid.

The defendants rely in part on <u>Pace v. Pace</u>, 57 Ohio App. 281 (Stark Cty. 1936), in which a plaintiff originally brought suit with respect to a cognovit note in the simple form, i.e. on

14

the terms of the note (not seeking cognovit judgment), but months later sought to procure cognovit judgment by the warrant of attorney.  The court held that "[w]hen plaintiff once selected her forum, her form of procedure, and her remedy, appellant had a right to the assumption that such would be pursued; and that she had no right thereafter, without dismissal, amendment or notice, to pursue another course...." Id. at 287.  The defendants argue that PNC must amend its pleading in order to pursue judgment on the terms of the instrument, because "[a] litigant is not authorized to request a form of relief in a motion for summary judgment different from that requested in its pleading." Davis v. Sun Oil Co., 953 F.Supp. 890 (S.D. Ohio 1996), aff'd, 148 F.3d 606 (6th Cir. 1998).  In Davis, the court held that because plaintiff's complaint did not seek restitution as a form of relief, it was not entitled to a summary judgment order granting restitution or ruling on the merits of a claim for relief in the form of restitution.

This case is distinguishable from Davis, because the primary reasoning behind that the decision was the plaintiff moved for an entirely new form of relief not pled in the complaint.  The defendants argue that if the Court fails to issue a cognovit judgment, counts 1-3 are void.  The Court rejects that argument. In this case, although the captions of counts 1-3 refer to a cognovit judgment, the complaint specifically prayed for relief, among other things: (1) judgment against Pataskala on Count One for the amounts due on the Pataskala Note; (2) judgment against Lafayette and Mr. Mallory on Count Two for the amounts due on the Pataskala Guaranties; and (3) judgment against Hazelton for the amounts due on the Hazelton Note.  It is not necessary for the relief sought to be via a cognovit judgment because PNC is entitled to the same relief based on the terms of the instruments.  Thus, because a cognovit judgment has not been

entered, it is irrelevant to the outcome of this matter whether the cognovit answer was valid or whether PNC possesses the right to enforce the warrant.

For these reasons, and because the Court has found summary judgment for the plaintiff on grounds unrelated to the issues raised in the motion for judgment on the pleadings, the Court will deny that motion as moot.

## V. Conclusion

The Court finds that there are no genuine issues of material fact and that PNC is entitled to judgment as a matter of law as to counts one through eight of the complaint. Thus, the defendants' motions for partial judgment on the pleadings (Doc. 54) and partial summary judgment (Doc. 58) are denied. PNC's motion for summary judgment (Doc. 56) is granted. The Clerk is directed to enter judgment in favor of PNC as follows:

As to counts one and two of the complaint, the Court finds that Pataskala executed the Pataskala Note and promised, among other things, to make payments in accordance with the terms of the Pataskala Note. The Court further finds that PNC is the owner and holder of the Pataskala Note and that the sums due under the Pataskala Note were not paid by Pataskala. The Court finds that Lafayette and Mr. Mallory executed and delivered the Pataskala Guaranty, and under the terms thereof are liable for the sums due and owing on the Pataskala Note. Judgment is therefore entered against Pataskala, Lafayette and Mr. Mallory, jointly and severally, on the terms of the Pataskala Note and the Pataskala Guaranty, in the amount of $1,510,500.00 in principal, plus accrued interest at the rate of LIBOR plus 3.5%; $118,592.22 in real estate taxes paid by PNC; and $11,324.00 in other costs and advances.

As to counts three and four of the complaint, the Court finds that Hazelton executed the Hazelton Note and promised,

among other things, to make payments in accordance with the terms
of the Hazelton Note. The Court further finds that PNC is the
owner and holder of the Hazelton Note and that the sums due under
the Hazelton Note were not paid by Hazelton. The Court finds
that Lafayette and Mr. Mallory executed and delivered the
Hazelton Guaranty, and under the terms thereof are liable for the
sums due and owing on the Hazelton Note. Judgment is therefore
entered against Hazelton, Lafayette and Mr. Mallory, jointly and
severally, on the terms of the Hazelton Note and the Hazelton
Guaranty, in the amount of $4,047,806.47 in principal, plus
accrued interest at the rate of LIBOR plus 3.5%; $269,103.87 in
real estate taxes paid by PNC; and $15,468.00 in other costs and
advances.

As to count five of the complaint, the Court finds that
Pataskala executed and delivered the Pataskala Mortgage and that
Hazelton executed and delivered the Pataskala Second Mortgage and
that PNC is the owner and holder of those mortgages, and those
mortgages secure the amounts due under the Pataskala Note. The
Court finds that the mortgages are in default because payments
have not been made. The Court further finds that the conditions
of the mortgages have been broken, the break is absolute, and PNC
is entitled to have the equity of redemption and dower of the
current title holders of the following property, known as the
"Pataskala Property" be foreclosed:

> Land located in Pataskala, Licking County,
> Ohio with a street address of 0 Hazelton-Etna
> Road, Pataskala, Ohio, designated as parcel
> number 064-152712-00.001.

The Court finds that the mortgages were recorded with the
County Recorder and are valid and subsisting mortgages on the
Pataskala Property. The Pataskala Mortgage is senior to the
Pataskala Second Mortgage, and they are junior in priority under
Ohio law to any lien held by the Licking County Treasurer to

secure the payment of real estate taxes and assessments. All
amounts payable under O.R.C. §323.47 shall be paid from the
proceeds of the sale before any distribution is made to other
lien holders. It is therefore ordered that the equity of
redemption of the defendant title holders in the Pataskala
Property shall be foreclosed and the Pataskala Property shall be
sold free of the interests of all parties to this action subject
to the equity of redemption of Pataskala and Hazelton be forever
cutoff and barred. Notice of the time and place of the sale of
the Pataskala Property shall be given to all persons who have an
interest in the property according to the provisions of O.R.C.
§2329.26.

As to count six of the complaint, the Court finds that
Hazelton executed and delivered the Hazelton Mortgage and that
Pataskala executed and delivered the Hazelton Second Mortgage and
that PNC is the owner and holder of those mortgages, and those
mortgages secure the amounts due under the Hazelton Note. The
Court finds that the mortgages are in default because payments
have not been made. The Court further finds that the conditions
of the mortgages have been broken, the break is absolute, and PNC
is entitled to have the equity of redemption and dower of the
current title holders of the following property, known as the
"Hazelton Property" be foreclosed:

> Land located in Pataskala, Licking County,
> Ohio with a street address of 0 Hazelton-Etna
> Road, Pataskala, Ohio, designated as parcel
> number 064-152712-00.003.

The Court finds that the mortgages were recorded with the
County Recorder and are valid and subsisting mortgages on the
Pataskala Property. The Hazelton Mortgage is senior to the
Hazelton Second Mortgage, and the mortgages are junior in
priority under Ohio law to any lien held by the Licking County
Treasurer to secure the payment of real estate taxes and

assessments.  All amounts payable under O.R.C. §323.47 shall be paid from the proceeds of the sale before any distribution is made to other lien holders.  It is therefore ordered that the equity of redemption of the defendant title holders in the Hazelton Property shall be foreclosed and the Hazelton Property shall be sold free of the interests of all parties to this action subject to the equity of redemption of Hazelton and Pataskala be forever cutoff and barred.  Notice of the time and place of the sale of the Hazelton Property shall be given to all persons who have an interest in the property according to the provisions of O.R.C. §2329.26.

As to count seven of the complaint, due to the default under the Pataskala Note, the conditions of defeasance contained in the Pataskala Mortgage and the Pataskala Second Mortgage have been broken.  Thus, it is ordered that the personal property defined in the complaint as the Pataskala Personal Property be sold and the proceeds be used to satisfy the amounts due and owing to PNC.

As to count eight of the complaint, due to the default under the Hazelton Note, the conditions of defeasance contained in the Hazelton Mortgage and the Hazelton Second Mortgage have been broken.  Thus, it is ordered that the personal property defined in the complaint as the Hazelton Personal Property be sold and the proceeds be used to satisfy the amounts due and owing to PNC.

**IT IS SO ORDERED.**

/s/ Terence P. Kemp
United States Magistrate Judge